May it please the court. John Brooks for Appellant Allstate Insurance Company. I'd like to reserve five minutes for rebuttal if I may. I'd like to begin by addressing first the occupancy issue and then after that turn to the issue of vandalism. Isn't the occupancy issue a contested fact in this case? The occupancy issue was briefed below. But the judge never made a determination on it. The judge did not rule on it because she ruled on the maliciousness. So let me ask, if occupancy turns out to be important, which is to say if you don't prevail on your other argument, why shouldn't we send it back to the district judge to make a finding on it? Because I argue that the undisputed facts in the record don't permit any determination, but that the house was unoccupied. For how long? It became unoccupied when it ceased to be a customary abode of Ms. Let's assume that I have some question about which of the unoccupied clauses in the insurance contract apply. Is it is the record clear about how long the house was unoccupied? I believe it is, Your Honor. It is clear enough to know that it was occupied, unoccupied for longer than the 30 days prior. Is it clear that it was unoccupied for longer than 60 days? Yes. And there's no dispute on that issue in your view? Especially given the stipulation that it had been unoccupied since at least June or July of 2009, five months before the laws. Okay. Why don't you – I'm really much more interested in the coverage issue in this case, because if you're right on that, perhaps you are, and we'll get to it. But could you address the coverage issue? And let me ask you to – the briefs didn't do this, but take a look at this in context. You have a fire rider or a fire coverage under this contract, correct? You have no risk coverage. No risk coverage, which includes fire. Yes. Doesn't exclude arson. No. It would cover arson in many circumstances. Okay. And that has a 60-day unoccupied provision. It has a 30-day unoccupied provision. No, the vandalism has – isn't it where I've gone backwards? The standard fire provision has a 60-day provision, doesn't it? Under 2071, yes. Okay. So – and then we have vandalism provision that has a 30-day provision. Yes. Because fire is – including arson – is expressly covered under the standard fire provision, why would we apply the vandalism provision to a fire? Are we missing each other here? We may be. Okay. So let's start all over again. I'll try to take it on. Yeah. Let's start all over again. Let's assume there's no vandalism exclusion in the contract for a second. Okay? It's not a vandalism exclusion. Vandalism is covered. I know. Vandalism is excluded if it's unoccupied for 60 – for 30 days. Right. Okay. Let's assume there's – there's – let's assume there's nothing – no words in the contract at all about vandalism. You agree that the rest of the contract covers arson fires and would – and would – and would all those arson fires would only be excluded if the house was unoccupied for 60 days. Sure. So your position in this case is that the vandalism provision narrows the fire provision of the contract? Our position is that this is an all-risk policy that covers all risks. Well, yes or no? Does it narrow the fire provision of the contract? It provides an exclusion in the event of the unoccupancy of the house, which lasts longer than 30 days. Even for fires? Not for fires that are not intentionally set. An accidental fire would still be covered. You get – you answer my question in a long way to say yes. In other words, your position is that we have a fire provision in the contract that covers arson. It's only excluded if the house is unoccupied for 60 days. But this vandalism provision, which does not mention arson on its face or fire on its face, excludes those fires that were purposely set if the house was unoccupied for 30 days. Is that – is that – that is your position, isn't it? That's not quite right, and I want to correct something there. Okay. With respect to a fire, a non-intentionally set, non-maliciously set fire, an accidental fire, a brush fire, for example, there is no unoccupancy provision 60 days or 30 days. We have a right to have that under 2071, but the contract was written more narrowly, such that the exclusion – What is the exclusion for 60 days in your standard fire provision? We do not have an exclusion for 60 days. The only unoccupancy exclusion we have is the exclusion for vandalism and malicious mischief. Okay. Maybe I'm reading the wrong standard fire provision, because the one that you sent us was – the one in the record is kind of garbled, and if you're – if you're right about that, then I guess the question becomes even better. You've got a – you've got a contract that covers all fires and no – no – no restrictions at all about occupancy. But you're saying, except if those fires are vandalism, in which case, if the house is unoccupied for more than 30 days, it's not covered. Now, am I correctly stating your position? Yes, Your Honor. Okay. So now, having said that, let me – and I apologize. I just got the standard fire provision from California. Maybe you're entitled to have the 60 days in it. Didn't put it in this one. We can – we can figure that out. Why – why should we interpret this clause, vandalism, which is – doesn't mention the word fire, to include fire which is mentioned elsewhere in the contract? You knew how to say fire when you wanted to exclude it. We knew how to say all sorts of things, like graffiti and intentional water damage and any type of – But there's – there's nothing in the rest of the contract about graffiti, is there? Under the all-risk coverage, there's nothing in there about fire either. It covers all risks of accidental – No, no. You have a standard fire provision. You have a standard fire provision on this contract. On the – on the dwelling damage side, it's an all-risk. I understand that, but isn't it – On the property damage side, it's best to be careful. Isn't there a standard fire provision that's incorporated into this contract? I'm not sure if I understand what you mean, Your Honor, by standard fire provision. The record seems to reflect that there's a standard fire provision as part of the contract. What the contract provides is all-risk coverage for damages to the dwelling and specified peril coverage for damages to the content. No, I really understand that. We're talking past each other. Wasn't there a separate document, part of this contract, that's a standard fire provision? No, Your Honor. Well, it's in the record. How did it get there? 2071 is the – is the standard – is the form of standard fire contract allowable by California law. And was it – was it incorporated into this contract? No. What you can have is a contract which – the contract can be whatever the contract is, as long as it's consistent with – With the standard fire provision. With 2071. Okay. We're – I think we're on the same wavelength here. You do agree that the contract must be consistent with the standard fire provision. Yes, Your Honor. And the standard fire provision covers fires. It does. And it covers both accidental and intentional fires, does it not? It does. And so you're still saying that this vandalism provision, which doesn't mention fires, restricts coverage under the standard fire provision. Because the standard fire provision permits an exclusion for losses that occur while the house is vacant or unoccupied. And that's why the exclusion for vandalism and malicious mischief while the house is vacant or unoccupied is consistent with 2071. But the standard fire provision has a 60-day exclusion. And you have a 30-day exclusion for vandalism, don't you? It does. And that argued inconsistency was argued below by the other side. I know it was argued. And so tell me why – tell me why it should come out your way. Well, it was abandoned on appeal. I believe the reason that it was abandoned on appeal is that the remedy, if the court found that the 30 days was too restrictive and it needed to be 60 days, is the court would read 60 days into the contract, not strike the exclusion altogether. And your position is that doesn't help them because the house was unoccupied for more than 60 days. Or at least 11 months and up to 23 months. Okay. So just so that I understand what you said to me before, I thought you said to me that in this contract there was no 60-day exclusion. There is – May I understand this? It's not in the basic all risks contract. Is the 60-day exclusion read into it because of the standard fire contract or not? No. And just to make sure we're saying the same thing, the only exclusion we have that takes advantage of 2071's permission to exclude damages during unoccupancy It's for vandalism. It's vandalism, malicious mischief. We could have excluded all damages that occur during unoccupancy, even a brush fire. We didn't do that. We limited the exclusion to that particular type of risk that the courts have identified as becoming a substantially increased hazard when a house is vacant or unoccupied. It's this type of intentional third-party malicious damage. Why don't you just say we exclude arson? If we just say – If the house is unoccupied for 30 days. Well, then if we just said that, it wouldn't exclude all other types of – Well, I mean, in addition to your vandalism. I mean, it seems like vandalism – does vandalism always, you know – When you think of – when I think of – somewhat – my view is somewhat colored by the years that I spent doing, you know, petty crimes and whatnot. You don't think of – when I think of vandalism, I think of like graffiti, tearing out plumbing, ripping out equipment that's been installed in a house. When I think of arson, it's like – it's entirely different. It's an entirely different matter. The word – Arson is burning something – you know, burning a house or burning – setting a major fire. A couple of responses to that, Your Honor, that I think are important. One is vandalism is a broad term. And the fact that the first exemplars of that that spring to your mind are those that you mentioned doesn't mean that the term is not broader than that, especially with regard to malicious mischief, which complements the vandalism. And I don't think you have the same type of reaction to the words malicious mischief. Let me give you an example. We take a broad term like musical instrument. The first thing that springs to your mind may be pianos and guitars, and you don't think of accordions and didgeridoos at first. But clearly, they fall into the broad category of malicious mischief. Well, if I might, your argument, as I understand it, is that arson is a species of vandalism. And what you're really looking at is arson as an instrumentality of vandalism, and that the language of the exclusion doesn't go through any statement of the means or instrumentalities of vandalism. So vandalism is broader than that. The question I think that Judge Pius is asking is, does arson have a separate legal meaning arising out of the body of law that's been developed that we should be concerned with? I don't think so, and I would point the Court to two cases that I think help answer that question. One is the prior case, which interprets the usual meaning of vandalism and malicious mischief and interprets it broadly to mean any type of intentional destruction of property. The second is under the Bay City's Supreme Court case and others cited in the papers. The meaning of this term needs to be interpreted within the context and its purpose in the policy. In the cases that we've cited have clearly recognized the purpose of the unoccupancy exclusion is that homes become vulnerable to certain kind of risks when they're not under the customary care of somebody living there, especially the kind of risks of a third party coming in and doing bad things to it. It could be bad things with rocks, fists, paint, water, urine, fire, blow torches, cherry bombs, sticks of dynamite. To start parsing between little acts of damage, you put a cherry bomb in the mailbox, that's vandalism because it's petty. Well, if I were the typical homeowner and I got this policy and I looked at that particular provision, I wouldn't think that it excluded arson caused by somebody else. I mean, you know, if the policyholder was the perpetrator of the arson, it would be a different issue. That's not this case. I need to disagree with that. If you ever got to the reasonable expectations of the insurance test, which is only the last thing you get to after several first steps. So you find it ambiguous when you get there. The question is, would it be within the reasonable expectations of the insurer to think that if I leave my property unprotected, I understand that certain kinds of damage are not going to be covered. But if a really big kind of damage happens, I've exposed the company to that increased risk, but I'm off the hook. I continue to have coverage because the damage turned out to be big. They burned the whole house down. Rather than small, they lit a fire in front of my front door and scorched the front door. I don't think it's reasonable to think I can leave my property, I can abandon it, exposed to this increased risk, and not think that just because the risk turns out to be a very severe damage, that all of a sudden I'm covered because I've increased and exposed them to that risk, Your Honor. You know, I might tend to agree with you that a normal property owner might assume that vandalism was covered under this clause, and then you have the exclusion. But my problem, and I keep going back to it, and I'm not sure that I've still got a good answer, is if there is in effect a separate provision covering fire because the standard insurance agreement is incorporated into the contract. And by the way, the one that we have in the record says this is a rider and this amends your contract. But put that aside. If there's a separate expectation of coverage of fire, then under those circumstances, would I understand that vandalism had a different exclusion? When the policy clearly provides that if you leave this house unoccupied, intentional damage, vandalism, or malicious mischief isn't covered, then, yes, I don't think you've got an expectation that just because the mode of damage chosen by the criminal involved flames, rather than something else, that you would have coverage. But you couldn't exclude, under the standard provision, you couldn't exclude fire unless the house was unoccupied for 60 days, right? That's true. And what you're saying is that a homeowner, you know, a person with perfect knowledge of all these provisions would say, yeah, but vandalism is different, so 30 days applies there. I think you wouldn't under either under your circumstance, but it seems to me that fire ought to be covered, doesn't it? When the house is unoccupied for 30 under our contract, or 60 if you import the time limit from the standard fire law. But you've told me that there is no 60-day limit in this contract. There is no. Because this is permissive. This allows you to, this says a 60-day limit applies unless otherwise provided. Right. And there's a, what this contract has chosen to do is take advantage of the permissible vacancy and occupancy exclusion only for intentionally caused third-party damages. Only for vandalism. Vandalism and malicious mischief. Okay. I got you. Okay. We're over your time. Okay. Have a seat. Thank you, Your Honor. I'll give you a minute for reply. I appreciate it. Good morning, Your Honor. Greg Ryan on behalf of Ms. Bales. I'd like to respond to counsel's argument with respect to the standard fire provision. Our position is pretty simple. When an insured customer buys a fire policy, they have a reasonable expectation that they're going to have fire coverage. Straighten me out on the record here. Because the standard fire provision, the California standard fire provision, says you can exclude if unoccupied for 60 days. That's correct. Your contract doesn't provide that? That's correct. So your contract, with respect to fire, doesn't have any specific exclusion with respect to occupancy? We argue that the exclusion doesn't apply to that. Well, no. Let me just make it separate. I'm not going to trick you here. There's a vandalism exclusion. Correct. And after 30 days of unoccupancy, it doesn't cover vandalism. There's nothing separate in your policy, the way the standard policy would allow, that says if there's a fire, we don't cover you if you're unoccupied for a blank number of days. Nothing. I understand the insurance company's argument is that vandalism includes fire. I'm just trying to find out factually, because some of the exhibits were hard to read here, what the contract says. Okay, go on. That's accurate. Okay. And what we are saying is that if the company is going to interpret that exclusion as applying to fire, whether it's fire, arson fire, or any other fire, it should say so. The word fire doesn't appear in the policy at all. The word arson doesn't appear in the policy. Well, it does. There's a reward, $5,000 reward, for identifying somebody who's responsible for an arson, a third party who's responsible for arson. That's in the standard fire policy, isn't it? No, that's in the deluxe policy here. Not that I've seen here. $5,000 reward. It seems to me in the record it has a $5,000 arson reward. Well, then I miss that. I don't think it applies here, but I do know that. Well, you didn't turn anybody in, so you're not going to get it. Correct. Yes. What we're saying is that if you're going to exclude arson fire, you should say so in plain, clear, and conspicuous language. There shouldn't have to be a situation where the insured has to guess, does vandalism and malicious mischief include arson fire? Or what kind of fire, if it does include fire, what kind of fire does it include? An insured reading this policy is not going to get an answer to that question, and that's the problem. There's ambiguity with this phrase, and so the answer to that question never comes until the claim is made. And then once the claim is made, we have this searching analysis of the language of the exclusion, which the insurance company is obligated to prove in order to deny coverage. And in the record, what they had available to them at the time was their own investigator's report that said it was undetermined, and, you know, the indication, a hearsay indication in that report, that the fire marshal had determined it was arson. That's a dispute right in the report itself. Now, that was what the insurance company had when they denied coverage. They denied coverage on grounds that this is arson. They knew that their own investigator did not agree. And then when it came time, when the litigation was filed and it came time to file a motion for summary judgment, they doubled down on that. You know, instead of interpreting that provision in favor of Ms. Bales, they brought in this very same expert. And this time the opinion is different. This time the opinion is, well, I think there is no dispute that this is an intentionally caused fire. And we know that Judge Huff relied on that because it's right there in her opinion. She cites to it. And this is the only evidence that was presented by Allstate or by anyone that this was an arson fire. If you prevail here, what happens when it goes back to Judge Huff? It doesn't go back to Judge Huff. We have a stipulation in this case that all remaining issues are compromised. And that's right there in the express language of the stipulation. That was the deal. We will drop our claims for punitive damages, drop our claims for bad faith, and there will be no more litigation. That was the, you know, we're done with litigation. We go to the court of appeal. There's one issue. Is there coverage or is there not coverage? Let me ask. I'm sorry, Mr. George. No, no, no. Did you try to settle this case? I mean, the house can't be worth that much. I'm sorry, Your Honor. What's the policy demand? What's the demand under the policy? I honestly don't know if there was a demand on the policy. Is there any value of that? Would anybody undertake a value of that? Well, the ultimate or the stipulation assigned a value to that claim for breach of contract of $200,000. Why don't you just, is there any attempt to really seriously settle this case? There were efforts to settle the case, yes. Did you talk to our mediation office? We didn't, yes. As a matter of fact, I believe we did. And it wasn't assigned to a mediator. So let's go back to this insurance contract. It's a deluxe contract. Does the record reflect what a non-deluxe contract would contain? A standard fire provision in a contract will cover the insured for fire. No, I understand, but I'm still, and perhaps this makes no difference in this case, but let me say what I'm hung up on. We have the standard fire insurance policy that would say, if incorporated in toto, that an occupancy for 60 days for fire disqualifies you from coverage, right? That is correct. So did you buy something more here? When you bought the deluxe policy, did you buy something more than the standard provision? Did you buy, as your opponent says, an unlimited time of coverage for fire, even with that occupancy being an issue? No. What did you get? We got a fire policy that had an exclusion for vandalism and malicious mischief that occurred. Yeah, no, I understand you did. My question is, did you, but you got a fire policy without the 60-day, as it could have had a separate provision that said 60 days for fires. That's right. We have a 30-day fire provision. Okay, and so in the absence of vandalism, you agree that you're covered under this contract for fires even after an occupancy? Absolutely. Okay. And the primary issue that was debated in the underlying forum was, what does it mean for a home to be unoccupied? I understand, but my question, and it's a long way of getting to it, was is there anything in this record that suggested that this policy cost more than one with the standard fire? Nothing. Okay. This is just the latest of years of policies. This was just simply a renewal. In fact, they sold the policy to my client knowing that she was not in the home at the time. They knew that. And now they raise this. If there's anyone that changed course in this litigation, it was not Bales. It was Allstate. Let me ask you one, just to follow up a question of Judge Hurwitz. So in the record, and I guess it's attached to the main policy, are some policy endorsements, right? Right. Various endorsements. And one of them starts off by saying, amendment of policy provisions. And it says, this amendment amends all of the following Allstate company and Allstate indemnity company policies. And then it has a bunch of them. Jargon. It has a whole list of different policies. And I guess it includes this one policy as well. Like deluxe, there's a provision here called deluxe plus homeowners. That's right. I'm not familiar with the endorsement that the court's referring to. I believe that the exclusion is contained in the body of the policy. But to take, Judge, is there a state, all these insurance companies have to register with the state insurance commissioner. Correct. Their standard, the basic, the essence of their, what they're going to insure against. And with 2071, they're obligated to incorporate exactly the language of the statute, which did not take place. You mean of the standard policy, they're required to include that. That's right. In the terms of this, quote, unquote, deluxe policy. That's right. Well, they could always agree to, you know, to afford more liberal coverage and more extensive coverage than what the policy provision. So if they have, if they issued you a standard all-risk policy that doesn't include the 60-day coverage, that's not, they've extended greater coverage, right? Absolutely. Right. And you paid for that greater coverage because you bought that policy, right? One would think. And they're not bound by the standard language at that point. They're bound by the contract language, which is, I extended the coverage, and whether you're living there or not, if this house burns down, we pay. Unless there's some other exclusion that applies. Now they assert that this separate exclusion applies, right? That's right. Okay. And so the argument is, bought this policy, the only possible exclusion is the one they've identified, the vandalism exclusion at this point. That's right. And to respond to the issue of the deluxe policy costing more or less or getting broader coverage or not, the answer to that is no. Basically, we paid the same premium one would pay for a standard policy with this exclusion with a shorter time period, 30 days. So let me try this again, and I'm going to ask your opponent the same question. The record contains a standard fire policy provision. It appears to be an endorsement to this policy. It doesn't have the 60-day limitation in it. And is that part of this policy? A 60-day provision? No, no. Is the standard fire endorsement, which is – I have it labeled as P000, begins at 87, I think, 86. Is that – was that an endorsement to this policy? I'm sorry, Your Honor. Is 0886? Yeah. Well, I'm looking at a policy endorsement that says the following endorsement changes your policy. It's part of the record. Read it carefully and put it with your policy. This endorsement changes your policy. Keep it with the policy. And it's in the record at P00085.  Is that part of the policy? An endorsement is a part of the policy. Is this one – this one in the record? Yes. Part of this policy? It is part of that policy. This one in the record, as your opponent suggests, doesn't have the 60-day exclusion for unoccupancy. That's correct. Okay. Thank you. And so the issue, Your Honor, is basically – the overarching issue here is is there coverage under this policy for a fire. That, in turn, depends on whether or not Allstate has approved the application of the exclusion. Now, the reason I say that if we prevail here, it doesn't go back to the court. It's because I view the issue differently. The issue is, in our mind, did Allstate carry its burden to show the application of this exclusion? And we argue that they did not. Why didn't they? Because, in part, they had disputed evidence that they offered to the court that was relied on by the court, and as a matter of law, is insufficient to prove the application of this exclusion. Now, if the court disagrees with that and agrees that Judge Huff was correct on the issue of the arson fire, there's still the next step, which is the policy interpretation. And that, again, under the principles of policy interpretation in California, puts the burden on the insurance company to show that their exclusion was plain, conspicuous, and clear. And our argument is it was not. You could go out on the street here, and I would bet you would ask somebody, what is malicious prosecution? And I would doubt that any of them would say, oh, that's arson fire. That's a fire. Or vandalism. They would think, I believe, I understand counsel's argument about that degree of damage. But someone, a layperson, which is the way we have to interpret it, would look at that as being what is commonly understood as broken windows, cherry bombing the mailbox. Arson fire? Not necessarily. Are we saying that the only interpretation of the policy is that it doesn't include arson fire? No. What we're saying is there are reasonable, at least two reasonable, interpretations of this policy exclusion, and that means it's ambiguous. Thank you, Your Honor. To address Judge Hurwitz's question about page 316 of the Exhibit of Record, yes, there's a policy endorsement that has certain terms of the standard of fire. But not the 60-day one. Not the 60-day one. Now, thank you for all indulging me on this. I now understand what happened here. Okay. So there's no conflict there. You have to look at the main body of the policy. The main body of the policy is more liberal than the rest. More liberal than the standard policy because the exclusion is limited to vandalism and malicious mischief. What the argument comes down to is whether, as I understand it, whether to make this broad language, vandalism and malicious mischief, sufficiently clear, we had to enumerate something like vandalism and malicious mischief, comma, including but not limited to fire or intentionally set fire, arson. I submit that that is a bad idea for a couple of reasons. First, it's not consistent with what the California Supreme Court said in Bay Cities that it's appropriate in a contract to use broad language to effectuate a broad purpose. Second, asking for enumeration because it's impossible to enumerate all the types of modes of damage that might be caused by hooligans when a house is unoccupied is a fool's errand. It creates more ambiguity than it solves. If you say including but not limited to fire, then you get, well, what about flood? What about chemicals? What about sticks of dynamite? It creates more questions than it solves. Following California's rules of statutory interpretation to interpret in context and with the purpose of the policy, the plain purpose recognized twice in case law is that when houses are unoccupied, they become vulnerable to this kind of malicious third-party damage of all sorts. So the policy has words that say when your house is unoccupied, we're not going to cover malicious third-party damage of all sorts. If you start enumerating it, you create ambiguities that are inconsistent with the purpose and the context of the policy. And for that reason, we believe it would be a bad idea to require the enumeration. Thank you. Thank you, counsel, for your arguments. The matter is submitted at this time.
judges: Erickson, Paez, Hurwitz